**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re:** | |
| | **Chapter 7** |
| **Phazzer Electronics, Inc.,** | |
| **Debtor** | **Case No. 19-12281-MFW** |
| | |
| | **Objection Deadline: Dec 5, 2019 at 4:00 pm (ET)** |
| | **Hearing Date: Dec 18, 2019 at 2:00 pm (ET)** |

**TASER INTERNATIONAL INC.'S MOTION TO DISMISS CHAPTER 7 PETITION OR,
IN THE ALTERNATIVE, GRANT STAY RELIEF, TRANSFER VENUE, AND
RESCHEDULE CREDITORS' MEETING**

TASER International, Inc. ("TASER"),[1] by its undersigned attorneys and pursuant to §§ 305(a)(1) and 707(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 1017, 2002, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves this Court to: (1) dismiss this Chapter 7 Case with prejudice or for abstention; alternatively, (2) grant relief from stay to continue the Florida Federal Court Action; (3) transfer venue to Florida pursuant to 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014; and (4) reschedule meeting of creditors pursuant to 11 U.S.C. § 341 and Fed. R. Bankr. P. 2003 (the "Motion"). In support of this Motion, TASER respectfully shows as follows:

---

[1] TASER changed its name to Axon Enterprise, Inc. ("Axon") effective April 5, 2017. TASER® is a registered trademark of Axon. As an acronym, TASER is always written in all capital letters, including in the former company name, TASER International, Inc.

1

## I.    PRELIMINARY STATEMENT

1.    As more fully explained herein, cause exists to dismiss this no-asset case pursuant to § 707(a) of the Bankruptcy Code because it was filed by Debtor in bad faith for the improper purpose of using the protections afforded by the Bankruptcy Code to thwart TASER's pending motions in the U.S. District Court for the Middle District of Florida, Case No. 6:16-CV-00366-PGB (the "Florida Federal Court Action") to initiate criminal contempt proceedings and implead non-debtor affiliated parties in a Proceedings Supplemental to Judgment Complaint, rather than for a legitimate bankruptcy purpose. Alternatively, it is in the best interests of creditors for this Court to abstain pursuant to § 305(a) of the Bankruptcy Code.

2.    This bankruptcy case should be dismissed for several reasons: (a) this is a no-asset case; (b) the bankruptcy primarily involves a two-party dispute between TASER and Debtor; and (c) Debtor has failed to comply with the requirements imposed on a Chapter 7 debtor by the Bankruptcy Code. Furthermore, for-cause dismissal is proper because Debtor has acted in bad faith. *See, e.g.,* Ex. 1 at 6 (**"The Court finds that Defendant Phazzer engaged in the above-described misconduct with the subjective intent to abuse the judicial process."**) Ex. 3 at 1 (finding **Debtor's "persistent and coordinated efforts to frustrate discovery and to delay and confound Taser in its attempt to enforce its Patent—has been egregious."**).

3.    Ultimately, there are no unencumbered assets for a Chapter 7 Trustee to administer and Debtor has acted solely to delay TASER in the Florida Federal Court Action primarily, if not exclusively, for the benefit of affiliated non-debtors.

4.    Simply put, there is no legitimate bankruptcy purpose for this bankruptcy case.

## II.    JURISDICTION

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 305(a), 362, and 707(a).

6.      This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).

## III.    PROCEDURAL BACKGROUND

**A.    The Debtor's Bankruptcy Case**

7.      On October 25, 2019 (the "Petition Date"), Debtor filed a voluntary petition (the "Petition") for relief under Chapter 7 of the Bankruptcy Code. David W. Carickhoff (the "Trustee") is the Chapter 7 Trustee for Debtor's bankruptcy estate.

8.      The Petition was filed just days after TASER filed its Motion for Leave to File Proceedings Supplemental Complaint and to Implead Third Parties in the Florida Federal Court Action.

9.      On October 25, 2019, this Court issued a Notice of Petition Deficiency (Doc. 3) regarding Debtor's Schedules A, B, D, E, F, G, H, Declaration about Debtor's Schedules, Summary of Assets and Liabilities, Disclosure of Compensation of Attorney, and Statement of Financial Affairs ("SOFA").

10.      The first meeting of creditors is scheduled for November 20, 2019. Undersigned counsel for TASER informed the Trustee on November 7, 2019, that TASER intended to file its Motion to Dismiss these Chapter 7 proceedings.

11.      Debtor's Schedules and SOFA reflect no assets other than a promissory note that Debtor concedes should be substantially discounted due to issues collecting it, and a litigation claim of nearly $31,000 which could be subject to an attorney charging lien as the law firm

prosecuting the claim is one of Debtor's few creditors other than TASER. TASER is the single largest creditor and accounts for more than 98% of Debtor's total scheduled debts.

**B.      The Debtor's Creditors As of the Petition Date**

12.      Based upon Debtor's November 8, 2019 filing, the only scheduled creditors of Debtor as of the Petition Date are: TASER with a claim in excess of $7.8 million, Wells Fargo with a debt of only $50,000.00, Sage Group, PLC, a software/IT company with a scheduled debt of $71,000.00, and the Willis & Davidow, LLC law firm that is owed nearly $40,000 in connection with Debtor's defense in the Florida Federal Court Action. Attorney Davidow is allegedly prosecuting an approximately $31,000 claim against Kambio Corp. listed as one of only two Debtor assets.

**C.      TASER's Florida Federal Court Action Against the Debtor**

**1.      The Underlying Judgment and Injunction**

13.      On March 2, 2016 TASER filed the Florida Federal Court Action for patent and trademark infringement, unfair competition, and false advertising against Debtor in the Middle District of Florida. As explained below, Debtor's willful and egregious behavior—calculated to increase TASER's expenses and avoid adjudicating the case on its merits—resulted in sanctions, default judgment, a permanent injunction, and treble damages.

14.      On July 21, 2017, after nearly 18 months of Debtor refusing discovery, violating court rules and orders, and failing to appear for numerous court-ordered depositions and hearings under threat of default, the district court granted TASER's motion for sanctions, entered a default judgment against Debtor for both trademark and patent infringement, and issued a permanent injunction, finding:

> **Since the outset of this litigation, Phazzer has engaged in a pattern of bad faith conduct designed and intended to delay, stall, and increase the cost of**

4

**this litigation.** Defendant Phazzer has repeatedly disregarded the Orders of this Court, and no sanction short of entry of a default judgment in favor of Taser, along with an award of compensatory and treble damages, an award of reasonable attorneys' fees and costs, and injunctive relief is adequate to address these violations.

(Ex. 1 at 1, emphasis added). The court further found that Debtor exhibited **"contemptuous"**, **"egregious"**, **"flagrant"**, **and "intentional obstructionist behavior"** constituting willful **"abuse [of] the judicial process."** (*Id*. at 4-6, emphasis added).

15.    Concluding that the "record fully supports these findings," on October 26, 2018, the Federal Circuit Court of Appeals affirmed "in its entirety" the district court's judgment and injunction against Debtor in appeal No. 17-2637. *Taser Int'l, Inc. v. Phazzer Electronics, Inc.*, 754 Fed. Appx. 955, 961, 965 (Fed. Cir. 2018). The appellate mandate issued on January 11, 2019. (Ex. 2).

16.    The district court's default judgment and permanent injunction was a final order resolving all issues in the case except for the accounting of damages. The July 21, 2017 order expressly awarded compensatory and treble damages and attorneys' fees and costs "in an amount to be determined in accordance with an expedited briefing and hearing schedule." (Ex. 1 at 7).

17.    On April 4, 2018, the district court entered its damages accounting order, awarding $3,057,154.29 in trademark infringement damages, $4,605,574.80 in patent infringement damages, $202,726.70 in attorneys' fees, and $4,122.95 in costs.[2]   (Ex. 3 at 8). Final judgment in the total amount of $7,869,578.74 was then entered against Debtor on May 11, 2018. (Ex. 4).

---

[2] Based on Debtor's woefully inadequate document production and failure to appear for depositions, the district court granted TASER permission to conduct third-party damages discovery, which delayed the accounting.

18.     Debtor separately appealed the damages accounting order in Federal Circuit appeal No. 18-1914, which was so frivolous that it resulted in a Fed. Cir. Rule 36 summary affirmance on July 23, 2019. (Ex. 5). The appellate mandate issued on August 30, 2019. (*Id.* at 3-4).

**2.     Debtor's Injunction Violations, Civil Contempt Determination, and Pending Criminal Contempt Motion**

19.     Less than 60 days from the district court's entry of its permanent injunction, Debtor and its "General" Steven Abboud ("Abboud") had already violated it multiple times causing the court to hold a civil contempt evidentiary hearing on October 12, 2017. (Ex. 6 at 2).

20.     Abboud was represented by counsel but failed to personally appear at his own contempt hearing, **a "pattern" of conduct the district court said was "truly outrageous" and "as close to me wanting to have a criminal contempt hearing as I've ever been."** (Ex. 7, 10-12-17 TR 4:13-5:14, 155:21-156:1, emphasis added). Kirk French, Debtor's purported owner, appeared and testified at the hearing, acknowledging Debtor has always been controlled by Abboud, a convicted felon multiple times over. (*Id.* at 33:18-19, 39:24-40:6).

21.     On May 4, 2018, the district court found that the evidence established "**beyond doubt**, that Phazzer [and its "executive" Abboud] has continued to sell, market, and distribute infringing Enforcer CEWs in violation of the Court's injunction." (Ex. 6 at 5, emphasis added). The district court therefore held Debtor and Abboud in civil contempt, but in light of the court's intervening damages and sanction award of more than $7.8 million, declined to assess additional monetary sanctions. (*Id.* at 8).

22.     However, the district court issued this stern warning:

**Phazzer,** *and all of its officers, agents, servants, employees, and attorneys*, **are hereby notified by way of this Order that any continued violations of the injunction will prompt this Court to initiate criminal contempt proceedings pursuant to Federal Rule of Civil [sic] Procedure 42.**

(*Id*. at 8-9, italic emphasis in original).

23.     Despite the lack of additional sanctions, Debtor again frivolously appealed the contempt order in Federal Circuit appeal No. 18-2059, which the Federal Circuit again summarily affirmed under Rule 36 on July 23, 2019.[3] (Ex. 8 at 1). The appellate mandate issued on August 30, 2019. (*Id*. at 2).

24.     But neither the district court's civil contempt ruling nor its criminal contempt warning stopped Debtor, Abboud and others affiliated with them from continuing to blatantly violate the injunction by selling the Phazzer Enforcer CEW and associated enjoined dart cartridges in the United States. On September 10, 2019, TASER therefore filed a motion for order to show cause why criminal contempt proceedings should not now be initiated. (Ex. 9). This motion remains pending in the Florida Federal Court Action and should be unaffected by the bankruptcy stay as it invokes the court's power to enforce the injunction, not collect a debt. In addition to Debtor, the contempt motion also targets individual third-party non-debtors Abboud and Diana Robinson ("Robinson"), a former Debtor employee and Abboud's live-in girlfriend in Davenport, Florida.

**3.     Abboud As Debtor's Alter Ego and French's Lack of Personal Knowledge of Debtor's Assets**

25.     In aid of execution on its judgment, TASER deposed Debtor's purported owner and corporate representative Kirk French ("French") in Nebraska on October 4, 2018. What became clear very quickly is that French is Debtor's "owner" in name only and that Abboud is its true owner. French testified that "at all times," Abboud "acted as the owner" and made the decisions for the company. (Ex. 10, French 10-4-18 TR 51:19-52:5).

---

[3] Abboud similarly appealed the contempt ruling in Federal Circuit appeal No. 18-2057, which was dismissed for lack of standing.

26.     French testified that, from the outset, Abboud was Debtor's "intended owner," but because he was going through a divorce and did not want the court to deem his ownership interest a marital asset subject to division, Abboud asked French to form Debtor for him. (*Id*. at 54:16-21, 61:13-62:17). Abboud trusted French because Abboud and French's wife are first cousins. (*Id*. at 59:19-25).

27.     French did not know who actually incorporated Debtor, testifying someone did it for him. (Ex. 10 at 17:2-5, 18:4-7). French put in no money, received no distributions, and was not involved in Debtor's operations. (*Id*. at 8:20-24, 59:4-8; *see also Id*. at 9:2-3, testifying the only benefit he received was having his cell phone paid). There also were no corporate formalities of any sort—no stock, no bylaws or other governing documents, no annual reports, no meetings or minutes. (*Id*. at 17:14, 22:17-22, 23:18-20, 30:12-17). French did not know if articles of incorporation existed or if corporate records were kept. (*Id*. at 22:3-5, 30:5-7). He certainly did not have them.

28.     Abboud, on the other hand, has managed and controlled Debtor since its inception in 2009. Abboud was the "General" and chief operating officer running the day-to-day operations of Debtor until at least August 21, 2017 when he purportedly resigned (a month after the injunction issued). (Ex. 7 at 33:13-19, 36:5-6, 53:20-23; Ex. 10 at 47:5-8). Thereafter, Abboud continued to serve as a "consultant" to Phazzer, actively involved in its management and control. (Ex. 10 at 27:24-28:10, 50:13-51:4).

29.     Despite French's corporate representative designation (and his signing Debtor's schedules here), French admitted, "I don't know a lot about what's going on in the company."

(*Id.* at 41:22-24).[4]  Indeed, French repeatedly testified that Abboud would be the better person to answer all questions regarding Debtor's post-injunction sales, assets, and inventory, including specifically where Debtor's inventory is located today. (*Id.* at 16:21-24, 99:2-6, 101:22-102:3, 115:14-21, 184:4-9).

30.     French testified he has no inventory documents, that Debtor warehoused stock at its Kissimmee, Florida office, but he doesn't know where that inventory is now. (*Id.* at 30:18-23, 79:22-25, 80:15-23). As with most things, French only knows what Abboud told him, *i.e.*, that the landlord (Hoagland Partners LLP) took everything when Debtor abandoned its office space (*Id.* at 24:21-27:6, 80:15-81:19), which is simply not true as confirmed by the landlord's recent subpoena response (Ex. 11) and evidence from a third party (Kambio Corp.) that Abboud secreted Debtor's inventory in its warehouse days before the district court's injunction issued. (Ex. 12).

### 4.      TASER's Proceedings Supplemental Complaint

31.     On October 21, 2019, TASER filed a Motion for Leave to file its Proceedings Supplemental Complaint impleading Abboud personally on alter ego/veil piercing theories, and two third-party entities also controlled by Abboud—Phazzer Global, LLC and Phazzer IP, LLC—on continuation entity and fraudulent transfer theories ("Motion for Leave").[5] (Ex. 13). The attached proposed complaint details Abboud's long-time misuse of Debtor as his personal cash cow, virtually funding Abboud's entire life, including a lavish Mercedes Benz purchase

---

[4] Similarly at the contempt hearing, French testified he had no personal knowledge of any technical aspect of Debtor's CEW products. (Ex. 7 at 32:15-20, 42:12-43:16, 58:3-4, 106:14-17).

[5] The alleged transfers all occurred in close proximity to the district court's July 21, 2017 judgment and injunction, more than two years before Debtor's Chapter 7 bankruptcy filing on October 25, 2019.

over $100,000 and paying credit cards of another business owned by Abboud. (*Id.*, Ex. A ¶¶ 20-27).

32.     The Proceedings Supplemental Complaint further describes the termination of Debtor's exclusive license to sell Phazzer® brand products in the U.S. and the diversion of Debtor's business opportunities to Phazzer Global and other newly licensed entities controlled by Abboud. (Ex. 13, Ex. A ¶¶ 29-50; *see also* Ex. 12 at 1, Abboud July 2017 direction to Kambio to reroute wire transfer for $131,573.00 from Debtor to Phazzer Global).

33.     It is therefore no coincidence that only 4 days after the October 21, 2019 filing of TASER's Proceedings Supplemental Complaint against Abboud that Debtor filed its bankruptcy petition. This is particularly true since French swore nearly two years before—in a December 30, 2017 affidavit filed in Debtor's first Federal Circuit appeal—that Debtor "is now on the verge of bankruptcy." (Ex. 14 at 1, ¶ 8).

34.     It is also telling that simultaneous with this Chapter 7 filing, Abboud launched his market reentry campaign—"Phazzer Reborn"—to coincide with the expiration of TASER's patent and the Florida district court's permanent injunction blocking the sale of Phazzer Enforcer CEWs in the United States.[6] (Ex. 15). The countdown clock to the November 1, 2019 relaunch was prominently displayed on the www.phazzer.com website historically used by Debtor. (*Id.*).

35.     This bankruptcy case is nothing but a mere continuation of Debtor's ongoing abuse of the judicial process and blatant obstructionist tactics, as previously found by the Florida district court.

---

[6] The injunction as to Phazzer dart cartridges violating TASER's trade dress continues without any expiration date. (Ex. 1 at 13-15).

# IV.    ARGUMENT

## A.    Debtor's Manifest Bad Faith Supports For-Cause Dismissal

36.    Section 707(a) of the Bankruptcy Code provides that the "court may dismiss a case under this chapter only after notice and a hearing and only for cause, including (1) unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 707(a)(1). "Although § 707(a) does not explicitly include bad faith as a basis for 'cause' the examples provided are not exclusive." *In re Iredia,* 556 B.R. 692, 699 (E.D. Pa. 2016). A bankruptcy court may, in its discretion, dismiss a Chapter 7 petition "for cause if the petitioner fails to demonstrate his good faith in filing." *Tamecki v. Frank (In re Tamecki),* 229 F.3d 205, 207 (3d Cir. 2000). *See also In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007) (holding a bankruptcy court may dismiss a Chapter 13 case if filed in bad faith).

37.    When a debtor's good faith is called into question, the burden shifts to the debtor to demonstrate its good faith in filing the petition. *Tamecki*, 229. F.3d at 207. "'Generally the facts surrounding good faith will be determined by circumstantial evidence,' as '[i]t is unlikely that a debtor will ever acknowledge its own bad faith.'" *In re Murpenter LLC*, 2012 WL 6645538 at *3 (E.D.P.A. Dec. 21, 2012) (quoting *In re Y.J. Sons & Co.,* 212 B.R. 793, 801 (D.N.J. 1997)).

38.    In determining whether a filing was made in good faith, courts consider the facts and circumstances surrounding the debtor's bankruptcy filing. *Iredia*, 556 B.R. at 699. The factors a bankruptcy court may consider include "the nature of the debt…; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." *In re*

*Myers,* 491 F.3d at 125 (quoting *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996)). Additionally, courts consider the debtor's honest intention and any abuse of the "provisions, purpose or spirit of bankruptcy law." *Tamecki*, 229. F.3d at 207; *Iredia*, 556 B.R. at 699.

39.     The Third Circuit has "specifically held that suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in the bad faith analysis." *In re Myers*, 491 F.3d at 125. *See also In re Dixie Broadcasting, Inc.,* 871 F.2d 1023, 1026-27 (11th Cir. 1989) (timing of petition filed during lunch recess in eleventh hour court-ordered settlement negotiations in state court litigation evidenced bad faith); *Murpenter*, 2012 WL 6645538 at *3 (affirming bankruptcy court's conclusion that debtor's petition filed one week before trial in a state court action involving the debtor's primary creditor was sufficiently suspicious to shift the burden to debtor to prove good faith); *In re George,* 2017 Bankr. LEXIS 1415, at 39 (Bankr. E.D. Pa. May 24, 2017) (noting litigation delay is insufficient to show good faith filing without a purpose consistent with reorganization or fresh start). Accordingly, "the filing of a bankruptcy solely to frustrate a foreclosure sale is some evidence of bad faith, but may be, standing alone, the only evidence needed to establish bad faith." *Id.*

40.     "[T]he burden is on the Debtors to establish that they filed their petitions in good faith . . . rather than as a litigation tactic." *In re JER/Jameson Mezz Borrower II, LLC,* 461 B.R. 293, 298 (D. Del. 2011); *In Re MacInnis,* 235 B.R. 255, 260, 262 (S.D.N.Y. 1998) (finding bankruptcy filing was in bad faith because totality of evidence showed it was a "tactic to avoid the state court proceedings," which "had progressed to an advanced state"); *In re Kaplan Breslaw Ash, LLC,* 264 B.R. at 335 (timing of debtor's filing evidences intent to hinder, delay and/or frustrate efforts of mortgage holder to enforce its rights).

41.     Further, inaccurate bankruptcy schedules may show a "lack of honest intention," "an abuse of the bankruptcy process inconsistent with good faith," a deliberate effort to conceal and misrepresent assets, and indicate bad faith. *Iredia,* 556 B.R. at 700. *See also Shipman v. Burtch (In re Shipman)*, 2012 WL 4498001, at *5 (D. Del. Sept. 28, 2012) (finding that conflicting and false statements in petition filings, among other things, demonstrate a lack of good faith).

42.     Courts also have found cause to exist where a petition was filed for no other purpose than to improperly frustrate the efforts of a secured creditor's foreclosure. *See In re VII Holdings Company*, 362 B.R. 663, 666 (D. Del. 2007) (noting that the court had previously dismissed the involuntary petition pursuant to §§ 303(i), 305(a)(1), and 707(a) upon a finding that the involuntary petition was filed in bad faith and "for no other purpose than to improperly frustrate the efforts of [the debtor's secured lenders]").

43.     Here, most of the factors cited in these cases point to a lack of good faith.

44.     First, it is abundantly clear that Debtor's bankruptcy filing directly on the heels of TASER's Motion for Leave to implead Abboud and other entities he controls into the Florida Federal Court Action constitutes bad faith.  It is undeniable that the bankruptcy was filed to protect these affiliated third-parties and to interfere with and delay TASER's prosecution of claims against them. The filing is also a transparent effort to avoid TASER's pending motion to initiate criminal contempt proceedings against Abboud and Robinson for their continued blatant disregard for the district court's injunction and prior contempt findings.

45.     The timing says it all—why file now when Debtor admitted it has essentially been insolvent and on the "verge of bankruptcy" for more than two years, and laid off its employees

and closed its Florida office way back in October 2017? (Ex. 14, ¶¶ 5, 6, 8). There is no good faith reason.

46.     Debtor's unrepentant delay tactics and bad faith are repeatedly documented in the Florida district court's orders. (Ex. 1, 3, 7). Furthermore, Debtor's Schedules and SOFA (Doc. 7) remain incomplete, misleading, and inaccurate. For example, Debtor provided no address for its purported owners and identifies TASER's claim as "disputed," despite it being reduced to judgment long ago and fully affirmed on appeal.

47.     Debtor's schedules also demonstrate a lack of honest intention and abuse of the bankruptcy process. The SOFA was sworn by Kirk French, who has admitted under oath in both the contempt proceedings and his corporate deposition in aid of execution that he has precious little personal knowledge regarding Debtor's financial affairs, assets, inventory, and products. (Ex. 7, 10). He has regularly pointed to Abboud as the person with knowledge who controls all these things. (*Id*.). And Abboud, as a convicted felon who has gone to great lengths to avoid being deposed or otherwise appearing in the Florida Federal Court Action, will never step foot in this Court to be examined on these matters.

48.     Debtor's schedules sworn by French are also inconsistent with his sworn testimony in the Florida Federal Court Action in numerous respects. For example, French testified at the contempt hearing that he is the "sole owner" of Debtor (Ex. 7 at 32:15-20), while the schedules list him and his wife as 50/50 owners. The schedules also fail to even list the Florida Federal Court Action as a legal or court action "in which Debtor was involved in any capacity—within 1 year before filing this case" (Doc. 7 at 15, Part 3, ¶ 7), despite being actively involved in that case at the time of the bankruptcy filing. Indeed, Debtor recently filed additional frivolous motions in that case, including for recusal of the district court judge.

49.     Nor do the schedules identify any court case against Kambio (and TASER has been unable to find one), although such litigation is listed as a potential asset (despite Abboud's clear fraud in secreting Debtor's inventory in Kambio's warehouse in the days just before the district court's default judgment and injunction and then having the audacity to invoice Kambio for it, *see* Ex. 12). (Doc. 7 at 5, Part 11, ¶ 74).

50.     French also fails to list the address of Debtor's principal place of business at 808 N. Hoagland Boulevard, Kissimmee, Florida from 2013 through approximately October 2017. (Doc. 7 at 16-17, Part 7, ¶ 14). This is a critical omission for venue and other bankruptcy-related purposes because Debtor's former employees (including Abboud and Robinson), former landlord (creditor Hoagland Partners), critical witnesses (creditor Kambio), inventory and other potential assets and records, and attorneys for both Debtor and TASER (including creditor Davidow) are all located in Florida.

51.     Moreover, this is primarily a two-party dispute between TASER and Debtor. Upon information and belief, TASER is the only creditor that is actively pursuing any claim and TASER's claim accounts for more than 98% of all of the liabilities that Debtor has scheduled. With interest, Debtor owes TASER more than $8 million.

52.     Yet, Debtor has identified only two assets of very dubious value. One asset is an alleged promissory note from Winifred Systems, Inc. that Debtor itself significantly discounted because of potential collectability problems.[7] The only other "asset" is the non-existent Kambio

---

[7] Indeed, the Winifred note is highly suspicious. According to the NYS Department of State, Winifred is owned by Kerri Allender who is also the "owner" of Phazzer Inc., which was incorporated in Delaware on November 15, 2018.  Affiliated with Abboud in several businesses, Allender is a noted scammer on the "#exposingscammers" Instagram page. https://deskgram.cc/explore/tags/exposingscammers

litigation that Debtor asserts is worth approximately $31,000 and which is being prosecuted by the same law firm Debtor represents is owed nearly $40,000. As such, there is little that a Chapter 7 Trustee can do to benefit creditors. Debtor has no assets to sell.

53.     There is no cash available to Debtor. (Doc. 7 at 4).

54.     Further, Chapter 7 cases filed by entities serve a very limited purpose. Because Debtor receives no discharge, the "fresh start" policy of the bankruptcy laws is not involved. *In re American Telecom Corp.*, 304 B.R. 867, 869 (N.D. Ill. 2004). The only proper purpose of the case is to permit the fair and orderly liquidation of corporate assets, "and a no-asset Chapter 7, of course, does not implicate this policy." *Id.* at 870 (emphasis added); *In re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 218 (D. Del. 1995) (dismissing Chapter 7 case under § 105(a) where debtor had no assets and case made "no sense in terms of bankruptcy policy").

55.     At bottom, there appears to be no legitimate purpose to this bankruptcy case and no reason for it to proceed other than the illegitimate purpose of delaying TASER's efforts to pursue non-debtor affiliated individuals and entities in Florida. There are no assets to be administered and Debtor is not entitled to receive a discharge. Instead, Debtor seeks, as always, to deplete TASER's assets and resolve.

56.     Under these circumstances, and any additional circumstances shown at the hearing on this Motion, ample cause exists for dismissal with prejudice.

**1.      Dismissal Should Be With Prejudice**

57.     Although § 707 of the Bankruptcy Code allows dismissal of a Chapter 7 case for "cause," the Bankruptcy Code is silent as to whether dismissal should be with or without prejudice.

58.     Dismissal for cause, with prejudice, is a relatively modest remedy against a Debtor so willing to defy court orders, delay proceedings, and increase costs. Congress cannot have intended to create a dismissal remedy against debtors that could be undermined through serial filings. This is particularly true where a case is dismissed based on the debtor's bad faith filing in a primarily two-party dispute.

59.     Moreover, § 105 of the Bankruptcy Code allows this Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. Finally, "[d]ismissal or suspension of a case may be appropriate when the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor." *In re AMC Investors, LLC*, 406 B.R. 478, 488 (D. Del. 2009). Thus, dismissal with prejudice is appropriate in this case.

60.     Attached hereto as Exhibit 16 is a transcript of the decision from Judge Shannon dismissing a bankruptcy case with prejudice finding that the case was filed in bad faith largely because of a two-party dispute. *See* Transcript of Court Decision re: Motion to Dismiss before the Honorable Brendan L. Shannon, Chief United States Bankruptcy Judge, in *Northwest Missouri Holdings, Inc. et al.*, Case No. 15-10728 (BLS), United States Bankruptcy Court, District of Delaware, dated May 26, 2015. This case is not only on point but is on all fours with this case and provides strong precedent for this Court to grant TASER's request to dismiss the case with prejudice.

**2.      Alternatively, This Court Should Dismiss the Bankruptcy Case Under the Doctrine of Abstention**

61.     Alternatively, the Court should dismiss Debtor's petition under the doctrine of abstention pursuant to § 305(a) of the Bankruptcy Code. Section 305(a) provides in relevant part:

(a)     The court, after notice and a hearing, may dismiss a case under this title or may

suspend all proceedings in a case under this title, at any time if --

(1)     the interests of creditors and the debtor would be better served by such

dismissal or suspension. 11 U.S.C. § 305(a)(1).

Thus, this Court has authority to dismiss Debtor's bankruptcy case if the interests of creditors

and Debtor would be better served by such dismissal. *Id.*

62.     Factors to be considered in determining whether the Court should exercise its

discretion pursuant to § 305(a) include: fairness, priorities in distribution, capacity for dealing

with frauds and preferences, speed, economy, freedom from litigation, and the importance of a

discharge to the debtor. *In re ABQ-MCB Joint Venture*, 153 B.R. 338, 341 (D.N.M. 1993).

Additional factors include the access of the parties to a pending state foreclosure forum, the

small number of remaining creditors, the necessary complexity of the bankruptcy process,

efficiency, and economy of administration. *Id.* (citing *In re Beacon Reef Limited Partnership,*

43 B.R. 644, 646 (S.D. Fla. 1984)); *In re Deacon Plastics Mach. Inc.*, 49 B.R. 982, 983 (D. Mass.

1985).

63.     *ABQ-MCB Joint Venture* is instructive. In that case, the bankruptcy court

determined that judicial resources would be wasted where there is little estate property that is

unencumbered, and the petitioning creditors had state law remedies they could pursue. 153 B.R.

at 341-42.

64.     In this case, most of these factors militate strongly in favor of abstention: Debtor

has no assets for a trustee to administer; Debtor has acted in bad faith for purposes of hindering

and delaying TASER; and this bankruptcy case essentially is a two-party dispute between

TASER and Debtor.

65.     There is no proper bankruptcy purpose for the filing of this case. There are no assets and no ability or effort to reorganize.

66.     Accordingly, Debtor's bankruptcy case should be dismissed with prejudice, pursuant to § 305(a) of the Bankruptcy Code.

**WHEREFORE,** TASER requests that this Court enter an order dismissing Debtor's Chapter 7 bankruptcy case with prejudice, or, alternatively, abstain pursuant to § 305 of the Bankruptcy Code, award TASER its attorneys' fees, and grant such other and further relief as is just and proper.

**B.     Alternatively, This Court Should Grant TASER Relief From Stay To Proceed With Pending Motions In the Florida Federal Court Action Regarding Criminal Contempt and Non-Debtor Third Parties**

67.     In the unlikely event the Court does not grant dismissal for any reason, the Court should nonetheless lift the stay to remove any doubt that TASER may immediately pursue its Motion for Leave to file Proceedings Supplemental Complaint (Ex. 13) in the Florida Federal Court Action against non-debtor third parties or seek other resolution to satisfy its judgment against Abboud, Phazzer Global, and Phazzer IP.

68.     TASER notes that its pending Motion for Leave should not be subject to the automatic stay in the first instance. Specifically, § 362(a)(1) bars commencement of a judicial action and issuance of process "against the debtor." *P & S & Co. LLC v. SJ Mak, LLC*, 254 So.3d 535, 539 (3d DCA Fla. 2018) (quoting 11 U.S.C. § 362(a)(1)). Impleader of third-party defendants under Florida's supplementary proceeding statutes is not judicial action against the debtor. Therefore, a debtor's bankruptcy filing does not stay such an impleader. *Id.* Section 362(a)(3) stays "any acts a court may take to obtain possession or exercise control over the property of the bankruptcy estate." *Id.* A motion for impleader and proceedings supplementary does not involve a court obtaining possession or exercising control over the debtor's property. *Id.*

Finally, § 362(a)(6) stays any act by a court to "'collect, assess or recover a claim against the debtor' from before the bankruptcy." *Id.* (quoting § 362(a)(6)). An order impleading non-parties into a supplementary proceeding case, giving them notice, and setting a hearing is not reached by a bankruptcy stay. *Id.*

69.    This is true even where the creditor in the supplementary proceedings seeks to pierce the corporate veil of debtor. *P & S & Co.*, 254 So.3d at 538; *Puig v. PADC Marketing, LLC*, 26 So.3d 45, 47 (3d DCA Fla. 2009) ("The language of section 362 refers only to actions against the debtor and *does not relate to any other interparty claims*.") (emphasis added).

70.    To the extent that the Court finds that a Florida impleader action or any portion thereof is subject to the automatic stay, the Court should grant relief from the stay. Section 362(a) of the Bankruptcy Code provides:

> [A] petition filed under section 301 ... of this title ... operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance of employment of process, of a judicial ... proceeding <u>against the debtor</u> that was or could have been commenced before the commencement of the case under this title ....

11 U.S.C. § 362(a)(1) (emphasis added).

71.    A party in interest may obtain relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code, which provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay ... for cause... .

11 U.S.C. § 362(d)(1). Importantly, TASER's Proceedings Supplemental Complaint is not <u>against</u> Debtor. In fact, it seeks to collect Debtor's substantial judgment instead from third-party wrongdoers who have hidden, transferred, and misused Debtor's assets for personal gain and improperly diverted business opportunities to continuation entities to avoid TASER's judgment.

72.     "Except for lack of adequate protection, 'cause' is not defined by § 362(d)(1). Cause is a flexible concept and courts often conduct a balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Group, Inc.*, 395 B.R. 852, 856 (D. Del. 2007). A party opposing a request for relief from stay bears the burden of proof on all issues other than a debtor's equity in property. 11 U.S.C. § 362(g); *see also In re Abeinsa Holding, Inc.*, 2016 WL 5867039, at *3 (D. Del. Oct. 6, 2016) ("Curiously, the cases considering such requests for relief tend toward asking the question: 'Why should the court lift the stay?' The statute, by its burden shifting, seems almost instead to ask, 'why shouldn't the stay be lifted?'").

73.     Motions for relief from a bankruptcy stay are customarily evaluated under the three-factor test articulated in *In re Rexene Products Co.*, 141 B.R. 574 (D. Del 1992) to determine whether:

a)  any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,

b)  the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and

c)  the creditor has a probability of prevailing on the merits.

*Abeinsa Holding,* 2016 WL 5867039, at *2; *see also In re Tribune Co.*, 418 B.R. 116, 126 (D. Del. 2009). Courts often follow the logic of the intent behind § 362(d) in determining whether cause exists to lift the stay—that it is often appropriate to allow litigation to proceed, if no prejudice to the estate, "in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere." *Tribune*, 418 B.R. at 126 (quoting legislative history of § 362(d)).

74.     Here, consideration of these factors greatly weighs in favor of granting relief from stay. Relief from stay will not prejudice Debtor's estate or the Trustee since neither the contempt

proceedings nor third-party claims implicate Debtor's assets, which are non-existent in any event.

75.    Conversely, TASER will face substantial hardship if the stay is not lifted. TASER has litigated the Florida Federal Court Action for nearly 4 years in the Middle District of Florida, where its attorneys and all impleaded individuals and entities are located. If TASER is forced to litigate its claims against such non-debtor third parties in Delaware, it would incur the increased expense of bringing attorneys, witnesses, and physical evidence to Delaware. Moreover, most of the relevant Florida-based witnesses cannot be compelled by subpoena to testify at any trial in Delaware, including, specifically, the principal bad actor in all of this—Abboud.[8]

76.    "[O]ne of the primary purposes in granting relief from the stay to permit claim liquidation is to economize judicial resources." *In re Peterson*, 116 B.R. 247, 250 (D. Colo. 1990). Here, judicial economy would be served by lifting the automatic stay and allowing TASER to prosecute its claim in the forum it has been in front of for years that is already familiar with the parties and the underlying facts. *See In re The Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. at 218 ("[T]he existence of a more appropriate forum than the bankruptcy court is 'cause' for relief under Code §362(d)(1)."); *In the Matter of Baker*, 75 B.R. 120, 121 (D. Del. 1987) (granting relief from stay to permit family court to determine issues with which it had expertise).

77.    The final prong of the *Rexene Products'* analysis is satisfied by "even a slight probability of success on the merits ... in an appropriate case." *In re Continental Airlines*, 152

---

[8] Fed. R. Civ. P. 45(b)(2) and (d)(3)(A)(ii), are made applicable in cases under the Bankruptcy Code by Fed. R. Bankr. P. 9016. The Committee Note to Rule 9016 states: "Although Rule 7004(d) authorizes nationwide service of process, Rule 45 F. R. Civ. P. limits the subpoena power to the judicial district and places outside the district which are within 100 miles of the place of the trial or hearing."

B.R. 420, 425 (D. Del. 1993). This prong also weighs in TASER's favor because it alleges that non-debtor third-party defendants' wrongful actions necessitate additional damages and relief. "Only strong defenses to [non-bankruptcy] court proceedings can prevent a bankruptcy court from granting relief from the stay in cases where ... the decision-making process should be relegated to bodies other than [the bankruptcy] court." *In re Fonseca v. Philadelphia Housing Authority*, 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990). TASER does not believe Debtor has any defenses to the supplemental proceedings complaint in the Florida Federal Court Action. The supplemental proceedings are against non-debtor third parties. As such, Debtor does not even have standing to the object to the supplemental proceedings, which, if successful, would allow TASER to collect on the judgment from a third party and reduce the amount of TASER's judgment against Debtor thereby actually benefiting Debtor.

78.      On these facts, significant cause exists to lift the stay. *See Rexene Products*, 141 B.R. at 576 (legislative history indicates "cause" may be established by single factor including to permit action to proceed in another tribunal).

79.      In addition, comity and judicial economy are relevant when deciding whether to grant relief from the automatic stay to permit litigation to proceed in the non-bankruptcy forum. *In re Glunk,* 342 B.R. 717, 741 (E.D. Pa. 2006) (granting motion for relief from automatic stay permitting litigation to proceed in state court).

80.      Similar considerations were decisive in *In re Philadelphia Athletic Club*, wherein the court held:

> We conclude that the stay should be so modified because the state court action is almost completed and to require the creditor to commence an action in the bankruptcy court to liquidate her claim would be unnecessarily repetitive, expensive and time-consuming. Further, permitting the creditor to finish her state court action would allow her to proceed against the non-debtor defendants for satisfaction of her claim.

9 B.R. at 281. The court further noted that because there had already been lengthy proceedings in state court, requiring the creditor to start over in bankruptcy court would be "a waste of judicial and legal time and effort." *Id.* at 282. And, no issue in the state court case required the legal competence of the bankruptcy court. *Id.; see also In re R.J. Groover Construction, L.L.C.*, 411 B.R. 460, 464 (S.D. Ga. 2008) (cause existed to modify stay where the state court litigation had been pending for years and had reached an advanced stage).  The same is true here.

**WHEREFORE**, TASER respectfully requests the entry of an order (1) modifying the automatic stay imposed by § 362(a) of the Bankruptcy Code to permit TASER to prosecute its pending motions in the Florida Federal Court Action for criminal contempt and impleading non-debtor third-party defendants to satisfy any judgment, and (2) granting to TASER such other and further relief as is just and proper.

**C.      This Court Should Transfer Venue of These Bankruptcy Proceedings To the U.S. District Court for the Middle District of Florida Where the Vast Majority of Creditors, Witnesses, and Potential Assets Are Located**

81.      In the alternative, pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014, TASER requests that this Court enter an order transferring venue for Debtor's bankruptcy proceedings to the U.S. District Court for the Middle District of Florida "in the interest of justice or for the convenience of the parties."

82.      The decision to transfer venue is solely within the discretion of the bankruptcy court. *In re Centennial Coal, Inc.,* 282 B.R. 140, 146 (D. Del. 2002). The party requesting transfer of forum bears the burden of proof, but "if the moving party meets its burden by the preponderance of the evidence, the court in its discretion may transfer a case in the interest of justice or for the convenience of the parties." *In re Rehoboth Hospitality, LP*, 2011 WL 5024267, at *3 (D. Del. Oct. 19, 2011).

83.     In determining whether to transfer a case, bankruptcy courts consider the following relevant factors:

   a)   proximity of creditors of every kind to the court;
   b)   proximity of the debtor;
   c)   proximity of witnesses who are necessary to administration of the estate;
   d)   the location of the debtor's assets;
   e)   the economic administration of the estate; and
   f)   the necessity for ancillary administration in the event of liquidation.

*In re Restaurants Acquisition I, LLC*, 2016 WL 855089, at *2 (D. Del. Mar. 4, 2016); *see also* 1 Alan Resnick & Henry Sommer*, Collier on Bankruptcy* ¶ 4.05[3][a][ii], at 4-33 to 4-34 (16th ed. rev. 2014).

84.     In Debtor's case, the factors relevant to venue favor Florida, rather than Delaware. First, while Debtor itself is undisputedly a Delaware entity, this is its only Delaware connection—none of its assets or operations are in Delaware. Debtor's principal base of operations was in Florida from at least 2013-2017.  Its employees, office, inventory, records, etc. were all last known to be there.  Abboud and Robinson live in Florida and run Phazzer-related businesses there that have taken over Debtor's customers, websites, and business opportunities.

85.     Moreover, Debtor's largest creditor accounting for more than 98% of Debtor's scheduled debts is litigating a Florida judgment in Florida, where counsel for both Debtor and TASER are located. The majority of other creditors (Hoagland, Kambio, Davidow) are also located in Florida. No creditors whatsoever are in Delaware.

86.     As one bankruptcy court noted in a similar venue dispute between Massachusetts and Delaware:

   [T]he Debtor's contacts with Delaware are minimal . . . . Other than the Debtor being incorporated there . . . there is no other apparent connection to Delaware . . . . The Debtor's contacts with Massachusetts are substantial, more so than any

other place in the World. The Debtor's operations are here; its assets are here; its current and former employees are here; and its management is here. Many of its creditors (measured in both numbers of creditors and the amounts owed to them) are here, too. . . . Clearly, the Debtor's venue selection was not based on the convenience of these constituencies given their geographic connection to Massachusetts.

*In re Malden Mills Indus., Inc.,* 361 B.R. 1, 10 (D. Mass. 2007). Similarly, in this case, Debtor's contacts with Delaware are minimal, while the contacts with Florida "are substantial, more so than any other place in the World." *Id.* This factor, therefore, favors transfer to Florida.

87.    Second, most key witnesses necessary to resolve disputes about administration of Debtor's estate, such as current and former employees and managers, are in Florida, not Delaware. Thus, these witnesses are likely beyond this Court's subpoena power. Even if such witnesses are willing to voluntarily appear in Delaware to participate in these proceedings (they won't), the travel costs would impose a significant expense on the estate. This factor also favors transfer to Florida.

88.    Third, Debtor's bankruptcy proceedings are more economically administered in Florida than Delaware. The Florida district court is already very familiar with Debtor's history, operations, and constituencies, having presided over the litigation giving rise to TASER's $7.8+ million judgment for nearly 4 years and which has numerous post-judgment motions, including for criminal contempt, pending in Florida today (despite not being listed in Debtor's schedules). *See Malden Mills*, 361 B.R. at 10 ("This Court is very familiar with the facts and litigants, having presided over Debtor's previous reorganization in Massachusetts."); *see also In re Consol. Equity Props., Inc.,* 136 B.R. 261, 267 (D. Nev. 1991) (transferring venue from Texas to Nevada due to Nevada court's familiarity with facts). The Florida court's familiarity will likely provide greater efficiency to resolving this case. Further, administrative expenses relating

to professional fees and travel will be dramatically lower in Florida than in Delaware. This factor also favors transfer to Florida.

89.     Given the context of this matter, the weight of the factors tips strongly toward Florida under 28 U.S.C. § 1412 and Bankruptcy Rule 1014.  Transfer is proper and warranted.

**D.     The Court Should Reschedule the Creditors' Meeting To Avoid Unnecessary and Duplicative Administrative Expenses and To Ensure That the Meeting Serves the Core Purposes of 11 U.S.C. § 341**

90.     Pursuant to §§ 105 and 341 of the Bankruptcy Code and Bankruptcy Rule 2003, TASER also requests that this Court enter an order rescheduling the Meeting of Creditors until after the Court decides the dismissal and venue issues.

91.     "Within a reasonable time after the order for relief, the United States trustee shall convene and preside at a meeting of the creditors. 11 U.S.C. § 341(a). In general, the meeting must "be held no fewer than 21 and no more than 40 days after the order for relief." Fed. R. Bankr. P. 2003(a). The statute and rules provide certain exceptions to both the scheduling and timing of such meetings. *See, e.g.*, 11 U.S.C. § 341(e) (pre-packaged plan filed); Fed. R. Bankr. P. 2003(a) (appeal of motion to vacate order for relief; motion to dismiss case).

92.     "Although the rules do not address the issue, there is little doubt that the court has authority to change the date of the § 341 meeting or to make other orders concerning the meeting."  3 *COLLIER ON BANKRUPTCY* ¶ 341.02[1], at 341-7; *see also In re Vance,* 176 B.R. 772, 773 (W.D. Va. 1995) ("It is, therefore, imperative and appropriate that this Court have jurisdiction over § 341 meetings, their scheduling, continuances, and so forth, if necessary"); *In re Astri Inv., Mgmt. & Secs. Corp.,* 88 B.R. 730, 736 (D. Md. 1988).

93.     As described above, the relevant venue factors all point to Florida, not Delaware. In light of this, TASER does not see what can possibly be gained by rushing to hold

the Meeting of Creditors in Wilmington, Delaware, far removed from most of the Debtor's creditors, business, and other parties-in-interest, who are located in Florida.  Either way, Kirk French, located in Nebraska, will have to travel.

94.    This Court should be concerned about the administrative expenses that will be incurred if the Trustee holds the Meeting of Creditors *before* the Court decides the venue issues. The Trustee will certainly need to expend significant time and resources to adequately prepare for the meeting and learn about Debtor's business operations, assets, and liabilities. If the matter is promptly transferred to Florida, as requested above, the new trustee can promptly schedule and hold a meeting of creditors in Florida.

95.    For these reasons, TASER requests that the Meeting of Creditors be rescheduled until after the Court decides the motion to transfer venue.

**WHEREFORE**, TASER respectfully requests that the Court enter an order (1) granting the Motion the Dismiss, or alternatively (2) transferring venue of Debtor's bankruptcy proceedings to the Middle District of Florida pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014, and (3) rescheduling the Meeting of Creditors until after the Court decides the venue issues pursuant to §§ 105 and 341 of the Bankruptcy Code and Bankruptcy Rule 2003.  Regardless, (4) the automatic stay should be lifted to allow TASER to proceed with the Florida Federal Court Action, (5) award TASER its reasonable attorney's fees and costs in this matter, and (6) grant such other and further relief as this Honorable Court deems just and equitable.

Dated:  November 15, 2019
        Wilmington, Delaware

**WERB & SULLIVAN**

*/s/   Brian A. Sullivan*
Brian A. Sullivan (DE 2098)
Duane D. Werb (DE 1042)
1225 N. King Street, Suite 600
Wilmington, DE  19801
Ph:  302-652-1100 / Fax:  302-652-1111
Email: bsullivan@werbsullivan.com
        dwerb@werbsullivan.com

-and-

Pamela B. Petersen
(AZ Bar # 011512)
Axon Enterprise, Inc.
17800 N. 85th Street
Scottsdale, AZ 85255 -9603
Telephone: 623-326-6016
Fax: 480-905-2027
Email: ppetersen@axon.com
Secondary: legal@axon.com

*Attorneys for TASER International, Inc.*
